IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ERIC Y. ROSE | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. MO-14-CA-129 |
| | § | |
| CALLON PETROLEUM COMPANY | § | |
| | § | |
| Defendant | § | |

**ORDER REGARDING MOTION FOR SUMMARY JUDGMENT**

This is a civil action for damages for personal injury, with jurisdiction founded on diversity of citizenship and jurisdictional amount. Plaintiff Eric Y. Rose alleges that he fell and sustained significant injuries to his head, neck, shoulder, and upper back due to Defendant Callon Petroleum Company's negligence. Defendant has filed a motion for summary judgment (Doc. No. 16) and Plaintiff has filed a response (Doc. No. 21). Having considered the motion and the response, the Court finds that Defendant's motion for summary judgment should be granted.

I. **Background**

The summary judgment evidence establishes the following facts: Defendant Callon Petroleum Company, based in Natchez, Mississippi, operates oil and gas wells throughout the Permian Basin. In February 2012, Callon hired an independent contractor,

1

Cactus Drilling Company, L.L.C. to drill an oil and gas well in or near Reagan County, Texas, referred to as Rig 156. Rose began working for Cactus on May 2, 2012, and in 2013, he was assigned to work on Rig 156 as a floorman.

On April 30, 2013, Rose began his shift at 5:30 a.m. with a safety meeting led by Jeff Montgomery, the Tool Pusher for Cactus and the senior employee at Rig 156. Rose was informed by Brent St. Clair, the Driller for Cactus, that one of his tasks for the day would be to rake drill cuttings into a dumpster tote. At 10:00 a.m., Rose was standing on the lid of the dumpster tote, raking drill cuttings, when the lid rolled and caused Rose to fall and land on his back on top of the dumpster tote. Rose returned to work after taking twenty minutes to recover. At 6:00 p.m., the end of his shift, Rose reported the fall to Jeff Montgomery. Rose spoke to a nurse on the phone and told her that he was experiencing mild discomfort in the center of his back, but that he could continue working. Rose worked the next day and then drove home to Monroe, Louisiana.[1]

While Rose was at home, Cactus referred him to Dr. Gordon Webb at a clinic in Alexandria, Louisiana. Based on a physical examination, x-rays, and an MRI, Dr. Webb concluded that Rose had a cervical strain and could return to work, but was

---

[1] Rose's work schedule consisted of working for two weeks at Rig 156, followed by two weeks off.

restricted from lifting more than thirty pounds. Rose returned to work on May 15, 2013. He worked until May 22, 2013, when he left to visit a chiropractor in Odessa, Texas. Since that day, Rose has been on a leave of absence, and has visited doctors in Louisiana and Texas, and has undergone injection therapy and surgery.

Rose filed this lawsuit against Callon in the 244th Judicial District Court of Ector County, Texas on June 23, 2014, and asserted a negligence claim. Callon removed the case to this Court on December 18, 2014. Callon has filed a motion for summary judgment, arguing that Rose's negligence claim is barred by Chapter 95 of the Texas Civil Practice and Remedies Code.

## II. Applicable Law and Analysis

Chapter 95 of the Texas Civil Practice and Remedies Code governs a property owner's liability for acts of independent contractors. TEX. CIV. PRAC. & REM. CODE § 95.003. Under that chapter, a property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, unless: (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress

3

or receive reports; and (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn. **Id.**

Chapter 95 applies only to a claim (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, contractor, or subcontractor or an employee of a contractor or subcontractor; and (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates or modifies the improvement. **Id.** § 95.002. The defendant bears the burden of showing that Chapter 95 applies to a plaintiff's claim. **Petri v. Kestrel Oil & Gas Props., L.P.**, 878 F. Supp. 2d 744, 770 (S.D. Tex. 2012). Once the defendant has shown the applicability of Chapter 95, the burden shifts to the plaintiff to establish both prongs of § 95.003, control and actual knowledge. **Id.** at 772.

The Court finds that Callon is a "property owner" within the meaning of § 95.002(2) because it is the mineral lease owner of the land where Rig 156 is located. **Id.** at 770 (citing **Francis v. Coastal Oil & Gas Corp.**, 130 S.W.3d 76, 84 (Tex. App-Houston [1st Dist.] 2003) ("Well settled law holds that a mineral lease conveys a fee simple determinable interest in real property.")). As for the second requirement of § 95.002, "[m]ineral wells . .

4

. are an improvement to real property as a matter of law." **Id.** at 771. Rose argues that the dumpster is not an improvement to real property because the dumpster is "by nature personal property that is movable and not a fixture to real estate." However, "[Section 95.002] does not require that the defective condition be the object of the contractor's work" and "the injury-producing defect must only "relate to" the contractor's work." **Sinegal v. Ryan Marine Servs.**, 712 F. Supp. 2d 597, 602-03 (S.D. Tex. 2008) (citing **Fisher v. Lee and Chang P'ship**, 16 S.W.3d 198, 201-02 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)).

Rose next argues that raking oilfield cuttings into the dumpster is not construction, repair, renovation, or modification of an improvement to real property. However, "activity facilitating a well's performance is construction, renovation, or modification." **Credeur v. MJ Oil Inc.**, 123 F. App'x 585, 588 (5th Cir. 2004). Rose was engaged in raking drilling waste into a dumpster, which is an activity that facilitates a well's performance. Accordingly, the Court finds that Callon has met its burden of establishing that Chapter 95 applies to Rose's claim. The burden now shifts to Rose to show that Callon had control over the manner in which the work was performed and that Callon had actual knowledge of the danger or

condition resulting in Rose's injury and failed to adequately warn.

### A. Control

To be liable, Callon must "have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way." **Petri**, 878 F. Supp. 2d at 776 (quoting **Ellwood Texas Forge Corp. v. Jones**, 214 S.W.3d 693, 700 (Tex. App.–Houston [14th Dist.] 2007, pet. denied)). The right to control must: (1) be over the operative detail of the contractor's work; (2) relate to the injury caused by the owner's negligence; and (3) be more than the right to order the work to stop and start or to inspect progress or receive reports or recommend a safe manner for the independent contractor's employees to perform the work. **Id.** The requisite control can be actual or contractual. **Id.** at 772. Specifically,

> A party can prove a right to control in two ways: first, by evidence of a contractual agreement that explicitly assigns the employer a right to control; and second, in the absence of a contractual agreement, by evidence that the employer actually exercised control over the manner in which the independent contractor performed its work. If a written contract assigns the right to control the employer, then the plaintiff need not prove an actual exercise of control to establish a duty. However, if the contract does not explicitly assign control over the manner of work to the employer, then the plaintiff must present evidence of the actual exercise of control by the employer.

*Id.* at 772-73 (quoting **Hernandez v. Hammond Homes, Ltd.**, 345 S.W.3d 150, 153-54 (Tex. App.—Dallas 2011, pet. denied)).

Callon and Cactus entered into the International Association of Drilling Contractors' standard form contract and made several modifications to it. Specifically, the parties deleted the clause stating Cactus would operate "under the direction, supervision and control of [Callon]." The parties also added Special Provision 27.5 which states that "Contractor (Cactus) is an independent contractor under this Contract and neither the Contractor nor any of Contractor's personnel shall be considered for any purpose to be an employee, agent or servant of Operator (Callon). Any provision in this Contract whereby the Operator or its representatives would otherwise have the right to direct the Contractor or its personnel as to the manner of performing the work hereunder shall be interpreted as meaning that the Contractor and its personnel shall follow the wishes of the Operator for the results to be achieved and not for the means whereby the work is to be accomplished." The Court finds that Callon did not have contractual control over Cactus.

Rose argues that Callon exercised actual control over Cactus's work because Callon selected and entered into a contract with another company, Tervita, to supply the dumpster

totes, deliver them to Rig 156, and then remove them when they were full.[2] In his deposition, Jeff Montgomery testified that there are methods of disposing of drill cuttings other than the use of dumpsters, including cement pits and conveyors.[3] By choosing to contract with Tervita, Callon exercised control over the means by which Cactus would be disposing of its drill cuttings. The Court finds that Rose has established a genuine issue of material fact as to whether Callon exercised control over Cactus.

**B. Actual Knowledge**

Danny Jackson, the Callon representative at Rig 156, testified in his deposition that nobody had ever notified him that lids on the Dumpster totes were loose, and that he did not have any knowledge that the lids were loose.[4] Plaintiff has produced no evidence that the issue of loose lids was ever discussed during the daily safety meetings, or any other evidence that Callon had actual knowledge of the loose dumpster lids.

---

[2] Danny Jackson Dep. 54:1-8 (Ex. D, Plaintiff's Response to Defendant's Motion for Summary Judgment).
[3] Jeff Montgomery Dep. 12:9-25 (Ex. C, Plaintiff's Response to Defendant's Motion for Summary Judgment).
[4] Danny Jackson Dep. 123:2-12 (Ex. D to Defendant's Motion for Summary Judgment.

Plaintiff argues that Callon had actual knowledge of the loose lids because Danny Jackson knew that there were "hooks and chain on the dumpster that could synch [sic] down the lids such that they would not move"[5] and that "the chains are used to secure the lid open so it won't move when someone's on top of the lid working on it."[6] However, Jackson's knowledge that the lids **could** be cinched down does not demonstrate actual knowledge that the lid was not **in fact** cinched down. Plaintiff has presented no other evidence to raise a fact issue as to whether Callon had actual knowledge of the dangerous condition. "An owner may be aware of the danger, but exercise no control, or he may exercise control and have no actual knowledge of the danger; in either instance, the owner is statutorily shielded from liability." **Ellwood**, 214 S.W.3d at 700.

Because Plaintiff has failed to establish both prongs of § 95.003, control and actual knowledge, his claim is barred by the statute. Furthermore, because Chapter 95 provides the exclusive remedy for claims of negligence against a property owner by an independent contractor and its employees, Plaintiff cannot sustain his common law negligence claim. **Petri**, 878 F.

---

[5] Plaintiff's Response to Defendant's Motion for Summary Judgment, ¶ 13.
[6] Danny Jackson Dep. 104:21-24 (Ex D., Plaintiff's Response to Defendant's Motion for Summary Judgment)

Supp. 2d at 777. Accordingly, Defendant's motion for summary judgment must be granted.

It is therefore ORDERED that Defendant Callon Petroleum Company's motion for summary judgment (Doc. No. 16) be, and it is hereby, GRANTED.

It is further ORDERED that judgment be entered in favor of Defendant, and that Plaintiff take nothing by his suit.

SIGNED AND ENTERED this 15th day of July, 2015.

_____
HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE